UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

MICHELLE M. ALBAUGH,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

Case No. 1:24-CV-90 JD

**OPINION AND ORDER**

Plaintiff Michelle Albaugh appeals the denial of her claims for supplemental security income under Title XVI of the Social Security Act. Although Ms. Albaugh raises several contentions, her most substantive argument concerns the ALJ's failure to provide an off-task limitation due to her suffering from migraines. For the reasons below, the Court will remand this case to the Agency for additional consideration.

**A. Background**

Ms. Albaugh applied to the Social Security Administration for disability benefits, alleging that she became disabled in December 2022. She was then 21 years old. Ms. Albaugh claimed that chronic headaches, dizziness, and mental impairments, among other things, prevented her from working full time. Ms. Albaugh's claims were rejected, leading to a review by an Administrative Law Judge ("ALJ").

On February 17, 2023, the ALJ issued a decision finding that Ms. Albaugh was not disabled. (R. at 22.) In doing so, the ALJ employed the customary five-step analysis. At Step 2,

the ALJ determined that Ms. Albaugh suffered from the following severe impairments: "venous insufficiency; asthma; postural orthostatic tachycardia syndrome ("POTS"); migraine; obesity; unspecified bipolar disorder; and generalized anxiety disorder ("GAD")." (R. at 13.)

At Step 4, the ALJ determined Ms. Albaugh's residual functional capacity ("RFC"),[1] finding that she can

> perform sedentary work[2] . . . except the claimant can occasionally climb stairs and ramps, stoop, and crouch, can never kneel, crawl, climb ladders, ropes, or scaffolds, or balance, as that term is used vocationally. Work with a moderate level of noise. Occasional exposure to vibration, humidity, extreme cold, fumes, dusts, odors, gases, and poor ventilation. The claimant must avoid all exposure to dangerous moving machinery and unprotected heights. With work that can be learned in 30 days, or less, with simple routine tasks, simple work-related decisions, and routine workplace changes. Occasional interaction with supervisors, and coworkers, but no tandem tasks, and no interaction with the general public. The claimant is able to remain on task in two-hour increments, with no production rate pace work such as on an assembly line.

(R. at 15–16.)

In light of this RFC, the ALJ determined that there are jobs in significant numbers in the national economy that Ms. Albaugh can perform (inspector, document scanner, and final assembler). (R. at 34.) The ALJ arrived at this conclusion after questioning a vocational expert at the hearing.

After the Appeals Council denied Ms. Albaugh's request for review of the ALJ's decision, she appealed to this Court.

---

[1] "The RFC reflects 'the most [a person] can still do despite [the] limitations' caused by medically determinable impairments and is assessed 'based on all the relevant evidence in [the] case record.'" *Cervantes v. Kijakazi*, No. 20-3334, 2021 WL 6101361, at *2 (7th Cir. Dec. 21, 2021) (quoting 20 C.F.R. §§ 404.1545, 416.945(a)).

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567.

2

**B.    Standard of Review**

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019)). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir.

2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

**C. Standard for Disability**

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;
4. Whether the claimant can still perform past relevant work; and
5. Whether the claimant can perform other work in the national economy.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity,

4

which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

**D. Discussion**

In fashioning the RFC, the ALJ considered Ms. Albaugh's testimony at the hearing and medical evidence in the record. The ALJ found that Ms. Albaugh's testimony "is not fully supported by the record . . . ." (R. at 16.) As relevant here, the ALJ found inconsistencies in Ms. Albaugh's report regarding the frequency of her migraines, the use of medications to treat them, and the nature of her headaches:

> She also reports migraines 1-2 times per week, although in August 2022, she tells her treating source these occur 1 to 2 per month, and she reported she is prescribed medication, however the record indicates at least at times, such as in August 2022, she is not taking that medication. Earlier records, from September 2020, include her reports she is no longer having migraines, instead she describes them as sinus headaches. Nevertheless, limits and restrictions are included in the claimant's Residual Functional Capacity to accommodate them.

5

(R. at 17 (citations omitted).[3]) In the decision, the ALJ does not indicate that she asked Ms. Albaugh why she was not taking the medication.

The ALJ noted that, in April 2021, Ms. Albaugh saw a neurologist, Dr. Thomas Vidic, concerning her migraines. According to Dr. Vidic, Ms. Albaugh had two headaches in the month before. She was diagnosed with benign intracranial hypertension[4] and migraine without aura, not intractable. (R. at 18.) Next, the ALJ observed that, at another appointment, in July 2021, "she had stable[5] pseudotumor cerebri[6] and migraine." (*Id.*) According to the ALJ, neurology records from October 2022 note "that a Medrol dose pack on September 26, 2022, for a continued migraine had broken her headache cycle. She was feeling 'much better' and she was having 'less than 2 [headaches] a week.'" (R. at 19.) Finally, the ALJ stated that "[w]hile there was a hospital visit for headache and visual disturbance, [Ms. Albaugh's] symptoms nearly resolved after a lumbar puncture,[7] the work-up was unremarkable, and the claimant declined further

---

[3] The vast majority of the ALJ's citations are unhelpful because they refer to entire exhibits rather than specific passages or notes within those exhibits. As a result, it is difficult to determine the sources for the ALJ's statements. For example, in this passage, the ALJ cites Exhibits B5F and B15F, which contain 75 and 62 pages, respectively. The Court's review of the ALJ's decision is not intended to be a research project; the Agency cannot reasonably expect the Court to sift through the entire record. The solution—citing specifically to the passage that the ALJ relies on—is both readily available and has been used effectively in countless prior decisions.

[4] "Idiopathic intracranial hypertension (IIH) is increased pressure in your skull. It occurs because of cerebrospinal fluid buildup around your brain. The cause is unknown. It can affect your vision and cause headaches, nausea or ringing in your ears." Cleveland Clinic, https://perma.cc/5L8M-LJHV, last visited April 1, 2025.

[5] Stable condition: "A statement that a patient's condition has not changed significantly." Taber's Medical Dictionary Online, https://perma.cc/R34N-G5PU, last visited April 1, 2025.

[6] Pseudotumor cerebri is the same as idiopathic intracranial hypertension. *See* Mayo Clinic, https://perma.cc/ACF5-7X3F, last visited April 1, 2025.

[7] The note that the ALJ relies on describes the circumstances of Ms. Albaugh's medical emergency: "She was out of town for the weekend and came home and lost vision out of her right eye. This lasted approximately 1-1/2 weeks. She saw her eye doctor, Dr. Steve Sorenson, and was sent to the ER at Elkhart Hospital. . . . She reports having a lumbar puncture during this hospitalization which immediately resolved the vision loss in her right eye and helped her headache for approximately 1-1/2 weeks." (R. at 1094.)

recommended treatment."[8] (*Id.*) There's no indication that the ALJ ever asked Ms. Albaugh why she declined further treatment.

The ALJ noted that the state agency medical consultants limited Ms. Albaugh "to light work with stand and walk at 4/8 hours." (R. at 19.) The ALJ was not persuaded by the consultants' findings "in light of the combination of the claimant's physical impairments and placed the claimant at the sedentary exertional level." (*Id.*)

Nowhere in her decision does the ALJ explain how, despite Ms. Albaugh's continuous, albeit reduced, number of migraines (if the ALJ's account is to be accepted), she would be "able to remain on task in two-hour increments" during a workday. (R. at 16.) As a result, Ms. Albaugh is asking this Court to reverse the ALJ's decision and to remand for further consideration. The Court agrees with Ms. Albaugh. "We must uphold an ALJ's ruling if it is supported by substantial evidence, *see* 42 U.S.C. § 405(g), but that support is missing when the ALJ either fails to build a logical and accurate bridge between the evidence and conclusion or fails to follow the agency's own regulations in a way that likely bears on the outcome." *Fisher v. Berryhill*, 760 F. App'x 471 (7th Cir. 2019). There's no logical bridge here between the evidence and conclusion.

To begin with, the Court notes that the ALJ discredited Ms. Albaugh's testimony regarding the frequency and intensity of her migraines, stating that she has not been taking prescribed medications and has declined the treatments offered to her. That said, since the ALJ

---

[8] The treatment to which the ALJ refers was the placement of a shunt: "Discussed the basics of ventriculoperitoneal shunting as well as possible side effects, and perioperative risks, infection and risk of mechanical failure. She states she really does not want to have any type of surgery at this time. She is aware that if she is unable to control symptoms with weight loss and medications, surgery may be the only option to preserve vision." (R. at 974.)

never asked her about the reasons for her lack of action before discrediting her, the ALJ committed an error:

> Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference. S.S.R. 96-7p, 1996 SSR LEXIS 4 at *22, 1996 WL 374186, at *7; *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009); *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008). An ALJ may need to "question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner." S.S.R. 96-7p, 1996 SSR LEXIS 4 at *22, 1996 WL 374186, at *7. The claimant's "good reasons" may include an inability to afford treatment, ineffectiveness of further treatment, or intolerable side effects. 1996 SSR LEXIS 4 at *22, [WL] at *8.

*Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012); *see also Visinaiz v. Berryhill*, 243 F. Supp. 3d 1008, 1014 (N.D. Ind. 2017) (remanding where "the ALJ did not ask Plaintiff about her perceived failure to seek adequate treatment" when the plaintiff's only treatment was through medication that provided "some benefit").

Next, even under the ALJ's assumptions, Ms. Albaugh is not free of migraines. A migraine is "a condition marked by recurring moderate to severe headache with throbbing pain that usually lasts from four hours to three days, typically begins on one side of the head but may spread to both sides, is often accompanied by nausea, vomiting, and sensitivity to light or sound, and is sometimes preceded by an aura and is often followed by fatigue." Merriam-Webster Dictionary, https://perma.cc/2NB3-SCA6 (last visited on April 1, 2025); *see also* Migraine, https://perma.cc/2J9C-EK6R ("A migraine is a headache that can cause severe throbbing pain or a pulsing sensation, usually on one side of the head. It's often accompanied by nausea, vomiting, and extreme sensitivity to light and sound. Migraine attacks can last for hours to days, and the pain can be so bad that it interferes with your daily activities.") (last visited April 1, 2025). So, the mere fact that the ALJ added more restrictions than the State agency consultants does not

excuse the ALJ from explaining how the RFC accommodates Ms. Albaugh's condition. The ALJ's own findings acknowledge that, while the frequency of the migraines varied, during the entire period under consideration, Ms. Albaugh experienced migraines. And at Step Two the ALJ acknowledged that the migraines were "severe impairments." By definition, a migraine causes throbbing pain that lasts for a while. Yet in the RFC, the ALJ states that Ms. Albaugh is able to remain on task in two-hour increments, an apparent inconsistency that is not explained. Ms. Albaugh's medical records show that she consistently complained of migraines and was prescribed various medications to alleviate her suffering. While there are periods when the cycle of the migraines was stopped or she felt better, there's nothing suggesting that she has been cured of migraines, or that a permanent solution has been found.

The Commissioner's arguments to the contrary are unconvincing. The Commissioner insists that her migraines have been infrequent. But even if the migraines occur only once or twice a month, there's no telling that they would not render Ms. Albaugh unemployable in light of the vocational expert's testimony that employers do not tolerate off-task time more than 10 percent of an eight-hour workday or six absences per year. (R. at 57–59.)

The Commissioner also states that the ALJ accommodated Ms. Albaugh's headaches by restricting her to work that has moderate level of noise and only occasional exposure to vibration, humidity, extreme cold, fumes, dusts, odors, gases, and poor ventilation. Even though the ALJ does not say why these restrictions are included, it does appear that she adopted them from the prior administrative medical findings which considered them, among other things, in relation to Ms. Albaugh's migraines. (*See* R. at 92, 103.) However, the record does not indicate that Ms. Albaugh suffered the migraines only under the outlined conditions, so it's not immediately apparent that they fully account for her migraines. *See Moore v. Colvin*, 743 F.3d

9

1118, 1127 (7th Cir. 2014) ("As to the limitations imposed by that severe impairment, the ALJ recognized in the RFC only that she should be limited to sedentary work in which she could avoid concentrated exposure to extreme cold, extreme heat, noise, fumes, odors, dusts, gases, poor ventilation, hazardous machinery and heights. The ALJ never related those specific limitations to certain impairments. It is possible to postulate which were related to migraines as opposed to the other severe or non-severe impairments such as obesity, asthma and rheumatoid arthritis, but the reviewing court should not have to speculate as to the basis for the RFC limitations."). The Commissioner argues in the response that Albaugh told medical providers that her "episodes" occurred only when she "stood up quickly or had not eaten." (DE 20 at 10 (quoting R. at 1071–72).) But these "episodes" relate only to Albaugh's fainting, not her migraines. Perhaps the environmental limitations are designed to limit the impact of certain medical events, not prevent them. But the ALJ is silent on this issue also, and it is not the Court's role to make such an assessment. The Court can only review for substantial evidence and reasonableness of explanation, neither of which are present here. *See id*. at 1127–28 ("[T]he ALJ erred in disregarding the migraines as a factor in determining [the plaintiff's] ability to perform her past work. Specifically, the ALJ should have at least included in the RFC determination the likelihood of missing work. The ALJ's decision did not reflect any likelihood of absences or breaks at work related to migraines, and that is simply unsupported by the record.").

In addition, the Commissioner's argument that the placement of the shunt was considered in relation to her vision instead of the migraines ignores the nature of idiopathic intracranial hypertension which can affect one's vision and cause headaches. *See* Cleveland Clinic, https://perma.cc/5L8M-LJHV; (*see also* R. at 971 ("If Patient's Pseudotumor Cerebri Remains Refractory To Medical Management Over The Next 3-6 Months, Would Then Have The Patient

10

Follow Up With Dr. Kistka, The Neurosurgeon, For VP Shunt Placement For Treatment Of *Pseudotumor Cerebri*" (emphasis added).) More importantly, the Commissioner makes this assumption without any medical evidence in support. Finally, the Commissioner is under the impression that, since the medical experts did not provide an off-task restriction, the ALJ cannot be faulted for following their lead. This argument is flawed for two reasons. First, the ALJ was not fully persuaded by the state agency consultants, so it's not even clear that she was following their lead. Second, if the Commissioner was right, then the requirement for a logical bridge would be obsolete whenever the ALJ's conclusion matches that of the state agency consultants. But as countless cases show, this is not so.

To be clear, none of this is to say that the ALJ had to find Ms. Albaugh disabled; the ALJ was however required to base her opinion on substantial evidence and explain it with "enough detail and clarity to permit a meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Since the ALJ failed in both respects, the Court must remand.

### E. Conclusion

For these reasons, the Court REVERSES the Agency's decision and REMANDS this matter to the Agency for further proceedings consistent with this opinion. The Clerk is directed to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: March 31, 2025

                                       /s/ JON E. DEGUILIO
                                       Judge
                                       United States District Court